<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In Re: | : | |
| | : | **MDL Docket No. 1479** |
| **NEURONTIN ANTITRUST** | : | **Master Civil Action No. 02-1390(FSH)** |
| **LITIGATION** | : | |
| | : | **CORRECTED OPINION** |
| | : | |

**SHWARTZ, United States Magistrate Judge**

## I. <u>INTRODUCTION</u>

This matter comes before the Court by way of the plaintiffs' second application for

sanctions pursuant to Fed. R. Civ. P. 37 based on the defendants' alleged failure to produce a

Rule 30(b)(6) witness sufficiently prepared to testify about their off-label use denials. For the

reasons herein, the defendants' application is granted in part and denied in part.[1]

## II. <u>BACKGROUND</u>

### A. Factual Background

The parties are familiar with the facts and the Court mentions herein only those necessary

to resolve this application. As the parties are aware, there are two Multidistrict Litigations

(MDL) before this Court concerning drug patents and alleged antitrust activity by the patent

holders. For convenience, the Court refers to and incorporates by reference previous factual and

procedural recitations set forth in <u>In re Neurontin Antitrust Litig.</u>, MDL No. 1479, Master Civ.

_____

[1]At the parties' request, the Court delayed ruling on this application.

No. 02-1390, 2009 WL 2751029 (D.N.J. Aug. 28, 2009), and In re Gabapentin Patent Litig., 648 F. Supp. 2d 641 (D.N.J. 2009).  The present application concerns only the MDL entitled In re Neurontin Antitrust Litigation.

Since 1994, Warner-Lambert has marketed Neurontin, which is a tradename for the anti-epilepsy drug Gabapentin.  In re Neurontin, 2009 WL 2751029, at *1.  Although the FDA initially approved Neurontin only for the treatment of epilepsy, doctors have prescribed Neurontin for "off-label" uses, that is, uses other than for the treatment of epilepsy.  Id. at *2.  By 1998, Neurontin was used almost exclusively for such off-label uses.  Id.  In 2000, Pfizer bought Warner-Lambert, and both are referred to herein as "the antitrust defendants."[2]  (See Johnson Dep. 34:18–21, June 15, 2010, ECF No. 362, Ex. A.)

The plaintiffs are direct purchasers of Neurontin who allege that the antitrust defendants engaged in an overall strategy to monopolize the market for Gabapentin by forestalling or preventing competition from generic versions of Gabapentin.  In re Neurontin, 2009 WL 2751029, at *3–4.  The plaintiffs allege, in part, that the antitrust defendants engaged in anticompetitive activity through patent prosecutions, official patent listings, and infringement litigation.  Id. at *4–6.  The plaintiffs also allege that the antitrust defendants marketed Neurontin for off-label uses and fraudulently stated unapproved uses for the drug in official drug listings to support its patent litigation efforts to delay the market entry of generic drugs.  Id. at *2, 5, 6.

**B. Procedural History**

**1. Preliminary History**

---

[2] Warner-Lambert and Pfizer are defendants in the antitrust action and are plaintiffs in the patent action.

On March 26, 2002, the plaintiffs filed their Complaint against the antitrust defendants embodying these allegations.  On August 15, 2002, the Judicial Panel on Multidistrict Litigation transferred all related antitrust actions to this District for coordinated and consolidated pretrial proceedings.  In re Neurontin Antitrust Litig., 217 F. Supp. 2d 1380 (J.P.M.L. 2002).  On October 23, 2002, the District Court stayed the antitrust MDL until the resolution of summary judgment motions in the related patent MDL.  (Order, Oct. 23, 2002, ECF No. 257.)

While In re Gabapentin proceeded and In re Neurontin was stayed, on May 13, 2004, a criminal information was filed against the antitrust defendants in United States v. Warner-Lambert Co., Crim. No. 04-10150 (D. Mass. 2004).  (Information, May 13, 2004, ECF  No. 365, Ex. 5.)  The information alleged that the antitrust defendants illegally marketed Neurontin for off-label uses.  (Information 19–36.)  On June 7, 2004, the antitrust defendants pled guilty to the crime charged in the May 13, 2004 information.  (See Johnson Dep. 35:5–12.)

 From 2005 to 2007, partial summary judgment was granted and appeals were pursued in the Federal Circuit in In re Gabapentin, while stays and limited discovery occurred in In re Neurontin.  On June 26, 2007, the Court stayed In re Neurontin until the Federal Circuit resolved the In re Gabapentin appeal (Order, June 26, 2007, ECF No. 55), which occurred on September 21, 2007.  In re Gabapentin, 503 F.3d 1254 (Fed. Cir. 2007).

On January 10, 2008, the Court set an April 1, 2008 deadline for the antitrust defendants to answer, move, or otherwise respond to the plaintiffs' Amended Complaint.  (Order, Jan. 10, 2008, ECF Nos. 60, 61.)  On February 27, 2008, the Court lifted all stays, affirmed the April 1, 2008 deadline, announced that no bifurcated or staged discovery would occur, and set a pretrial schedule.  (Order, Feb. 27, 2008, ECF No. 77.)  On April 1, 2008, the antitrust defendants filed

-3-

motions to dismiss in In re Neurontin.  (Motion to Dismiss, April 1, 2008, ECF No. 89; Motion

to Dismiss, April 1, 2008, ECF No. 90.)  Discovery proceeded while the motions were pending.

On April 2, 2009, one motion to dismiss was terminated as moot, and on August 28, 2009, the

Court denied the other motion to dismiss.  (Order Apr. 2, 2009, ECF No. 178; Order, Aug. 28,

2009, ECF No. 216.)  On September 14, 2009, the Court set an October 29, 2009 deadline for the

antitrust defendants to file answers to the Amended Complaints in In re Neurontin.  (Order, In re

Gabapentin, Sept. 14, 2009, ECF No. 694), and later extended that deadline to November 3,

2009.  (See Order, Oct. 27, 2009, ECF No. 365, Ex. 4; Order, In re Gabapentin, Oct. 27, 2009,

ECF No. 703.)  In their November 3, 2009 Answers, the antitrust defendants denied promoting

Neurontin for off-label uses.  (See Answer, Nov. 3, 2009, ECF No. 238; Answer, Nov. 3, 2009,

ECF No. 239.)

On October 1, 2009, the antitrust defendants moved for the pro hac vice admission of

counsel from Skadden, Arps, Slate, Meagher & Flom LLP (hereinafter "PHV counsel").

(Motion, Oct. 1, 2009, ECF No. 231.)  Among the certified statements made to the Court, PHV

counsel stated that they would be "bound by the jurisdiction of the Court" (id.), and local counsel

stated that they would be responsible for the conduct of PHV counsel.  (Motion Supplement, Oct.

1, 2009, ECF No. 233.)  On November 18, 2009, the Court granted the antitrust defendants'

motion for admission of PHV counsel and ordered that PHV counsel "abide by all rules of this

Court, including all disciplinary rules."  (Order, Nov. 18, 2009, ECF No. 245.)

### 2. The Last Seven Months of Discovery; Pleading Extensions and Deadlines

On June 5, 2009, the Court directed the parties to appear for a hearing regarding disputes

concerning the scope of Rule 30(b)(6) depositions and other case management issues.  (Order,

June 5, 2009, ECF No. 194.)  On June 19, 2009, the Court amended the pretrial schedule and set December 14, 2009 as the deadline for the close of fact discovery.  (Order, June 19, 2009, ECF No. 196.)  On July 28, 2009, the Court directed counsel to identify the dates reserved for depositions in these cases to ensure that they would be completed by the discovery deadline and further ordered that counsel submit monthly updates setting forth the status of every deposition. (Order, July 28, 2009, ECF No. 210.)

The parties filed deposition status reports on September 9, 2009, October 7, 2009, and November 5, 2009.  (Dep. Status Report, Sept. 2, 2009, ECF No. 219; Dep. Status Report, Oct. 7, 2009, ECF No. 232; Dep. Status Report, Nov. 5, 2009, ECF No. 240.)  In each one, the antitrust defendants failed to list deponents who would address "Rule 30(b)(6)" topics.  (Dep. Status Report, Sep. 2, 2009; Dep. Status Report, Oct. 7, 2009; Dep. Status Report, Nov. 5, 2009.)  In the November 5, 2009 report, the parties stated in a footnote that several disputes existed regarding the Rule 30(b)(6) notices served on the antitrust defendants.  (Dep. Status Report 11 n.2, Nov. 5, 2009.)

On December 4, 2009, the Court issued an Order resolving certain discovery disputes and set a December 8, 2009 deadline for a joint-submission concerning the Rule 30(b)(6) disputes. (Order, Dec. 4, 2009, ECF No. 257.)  On December 10, 2009, the Court considered the Rule 30(b)(6) disputes and ordered the antitrust defendants to produce a Rule 30(b)(6) witness to testify about "off-label marketing [of the product] for neurodegenerative diseases and the factual basis for the off-label uses denials in its Answer."  (Order, Dec. 10, 2009, ECF No. 264.)

### 3. First Rule 30(b)(6) Deposition

On March 17, 2010, the antitrust defendants produced James Gibney as a Rule 30(b)(6)

witness to purportedly testify about the topics identified in the December 10, 2009 Order. Gibney repeatedly stated that he assumed that outside counsel and either in-house legal counsel or the company assessed the allegations and prepared the Answers.  (Gibney Dep. 22:4–22:19; 22:15–18, 45:6–9, 49:8–10, 49:13–16, 50:7–10, 52:2–5, 53:3–8, 54:9–12, 58:11–14, 59:9–12, 60:8–11, 61:18–23, 64:18–21, 67:3–7, 78:4–8, 79:19–21, 81:4–7, 88:17–20, 89:16–18, 91:14–19, 92:25–93:3, 95:3–6, 98:3–7, 99:19–23, 102:1–12, 105:9–11, 118:16–18, 119:13–14, 147:2–8, 148:12–16, 150:9–16, 152:11–22, 153:2–6, Mar. 17, 2010, ECF No. 312.)  Gibney could not describe the assessment (see, e.g., id. at 58:20–24, 62:5–10, 99:24–100:2, 113:2–6) or who was involved (see, e.g., id. at 114:16–116:2), and repeatedly stated that he had no knowledge of the factual basis for the denials.  (See, e.g., id. at 89:19–24, 93:4–7, 105:12–14.) Gibney also had no knowledge of who at the antitrust defendants had made the decision to admit or deny the allegations in the Complaint.  (id. at 114:13–115:10.)  Gibney stated that PHV Counsel prepared him for the deposition and stated that the only contact he had with Pfizer/Warner-Lambert employees was a brief phone call asking for his participation as a Rule 30(b)(6) witness.  (Id. at 18:25–19:10, see also id. at 153:2–20, 156:21–157:21.)  Moreover, PHV counsel made a number of questionable objections and made statements not permitted under Fed. R. Civ. P. 30.[3]  Among other things, on two occasions, PHV counsel improperly interjected information while plaintiffs' counsel was asking questions.  For example, each time the plaintiffs' counsel began to ask about the assessment of the allegations done *by the attorneys*, PHV Counsel added the words "and the company" before the question was finished.  (Gibney Dep. 52:11–14, 53:20–25.)

---

[3] See infra note 17.

On April 5, 2010, the plaintiffs requested sanctions against the antitrust defendants for their failure to produce a witness who could provide the factual bases for their denials of off-label uses.  (See Op. Tr. 2:3-7, Apr. 15, 2010, ECF No. 324.)  The Court found that the antitrust defendants intentionally failed to produce a suitable Rule 30(b)(6) witness regarding the denials of off-label uses in the Answers.[4]  The Court further found that the antitrust defendants did this as part of a non-responsive litigation tactic.  (Id. at 13:20–24.)  By its April 15, 2010 Order, the Court denied the plaintiffs' request for specific, potentially claim dispositive, sanctions but ordered the antitrust defendants to provide a suitable Rule 30(b)(6) witness who could "provide the factual basis and explanation as to how the denials in [their] Answer[s] regarding off-label

---

[4] Among other things, the Court found that:

A review of the transcript and the arguments set forth in the April 5, 2010, submission demonstrate that the defendants opted to approach this deposition in the narrowest of ways.  Indeed, **the answers provided by the corporate representative demonstrate a desire to provide no information in terms of the factual basis**, and indeed, simply provided a response that described a process by which the denial was reached, not the facts upon which it was based.  **The party was responsible to produce an appropriately prepared witness, and its failure to do so prejudices the plaintiffs** as they are obviously attempting to reconcile the denials in defendant's answers with the public statements these defendants made concerning conduct involving the offlabel [sic] uses of the product.  And they are looking for the factual basis for those two different positions.

**This failure to respond appropriately was certainly not accidental, but rather was designed.**  While the Court is not prepared to impute bad faith, it does conclude from its review of the entire transcript that **a litigation technique was imposed that led to non-responsiveness.**  As a result, the situation that the defendants have presented is one in which they have not complied with the Court's order and did not disclose the information that the Court had found to be warranted, and, in fact, is consistent with the rules of civil procedure.

(Op. Tr. 13:5–14:4, Apr. 15, 2010, ECF No. 324 (emphasis added).)

-7-

uses and the marketing of the product for off-label uses is consistent with its public actions, including but not limited to its guilty plea and marketing activity." (Order, Apr. 15, 2010, ECF No. 318.) The Court also ordered the antitrust defendants to pay the plaintiffs' attorneys fees and costs for the March 17, 2010 deposition and for the new Rule 30(b)(6) deposition. (Order, May 7, 2010, ECF No. 333.) On May 7, 2010, the Court denied the request for reconsideration of its April 15, 2010 Order. (Id.)

### 4. Second Rule 30(b)(6) Deposition

On May 11, 2010, the Court extended the deadline for the antitrust defendants to produce the second Rule 30(b)(6) witness based on representations that they were not seeking a tactical advantage and that their witness, Rady Johnson, had scheduling conflicts. (Order, May 11, 2010, ECF No. 337.) Although the Court later questioned the reasons for the request,[5] (see Op. Tr. 12:11–13:11, Aug. 19, 2010), the witness has since provided a declaration describing the various scheduling issues present at the time of the then-scheduled May 12, 2010 deposition.[6] (See

---

[5] The Court questioned these reasons because of the antitrust defendants' failure to name a 30(b)(6) witness throughout the fact discovery period, their initial failure to produce an adequately prepared 30(b)(6) witness, and Johnson's various statements about when he first heard about the deposition and first saw the deposition outline, which suggested that the outline that PHV counsel prepared and produced at the June 15, 2010 deposition was not ready for the originally scheduled date of the deposition and the deposition was delayed to provide additional time to finish it. (See Op. Tr. 8:6–8, 1:21–23, Aug. 19, 2010, ECF No. 379; Johnson Dep. 5:22–25, 53:18–54:23.)

[6] On August 24, 2010, the antitrust defendants submitted a declaration in which Johnson stated that he was contacted about and agreed to serve as the Rule 30(b)(6) witness sometime during the first week of May 2010 (Johnson Decl. ¶ 3, Aug. 24, 2010, ECF No. 378), which was two weeks after the Court's order and one week before the deposition was to take place. Johnson also stated that he was unavailable for the May 12, 2010 deposition date because his mother had passed away in late April 2010 and he had a consequent backlog of work and preexisting vacation plans and professional commitments throughout May and early June 2010. (Id. at ¶ 4.) Johnson further stated that he received documents and deposition transcripts in late May 2010

Johnson Decl. ¶¶ 3–4, Aug. 24. 2010, ECF No. 378.)  The Court ordered that the deposition be completed by June 16, 2010, and that the antitrust defendants submit a letter setting forth the date and providing the name of the Rule 30(b)(6) witness.  (Order, May 11, 2010.)  On May 13, 2010, the Court entered Pfizer's letter as an Order setting June 15, 2010 as the court-ordered date for Johnson to appear for the Rule 30(b)(6) deposition.  (Order, May 13, 2010, ECF No. 341.)  The deposition occurred as scheduled on June 15, 2010.  (Johnson Dep. 1, 2.)  During the deposition, PHV counsel produced an outline he wrote for the witness to use during the deposition.

Nine days later, specifically on June 24, 2010, the antitrust defendants filed a letter requesting leave to file a motion to Amend their Answers to modify their denials of off-label uses.[7]  (Defs.' Letter, June 24, 2010, ECF No. 351.)  At about the same time, on June 25, 2010, the plaintiffs renewed their request for sanctions based upon their view that the antitrust defendants did not produce a Rule 30(b)(6) witness as required by Fed. R. Civ. P. 30(b)(6) and the April 15, 2010 Order.  (See Pls.' Letter, June 25, 2010, ECF No. 352.)  On June 30, 2010, the Court conducted a telephone conference with the parties.  (Tr. of Tel. Conf., June 30, 2010, ECF No. 367.)  Among other things, the Court set dates for the parties to contribute their portions of a joint discovery dispute submission concerning the plaintiffs' request for sanctions.  (Order, June 30, 2010, ECF No. 357.)  On July 8, 2010, the parties filed the present joint discovery dispute letter.  (Joint Letter, July 8, 2010, ECF No. 362.)

---

and met with the PHV counsel on June 8, 2010, June 10, 2010, and June 14, 2010 to prepare for the deposition.  (Id. at ¶ 5.)

[7] By way of Opinion and Order dated August 19, 2010, the request to file Amended Answers was denied.  (Order, Aug. 19, 2010, ECF No. 374.)

### III. <u>ARGUMENTS</u>

#### A. Plaintiffs

The plaintiffs contend that the antitrust defendants violated Rule 30(b)(6) and the Court's prior orders.  Specifically, the plaintiffs argue that: (1) Rady Johnson was not an adequate Rule 30(b)(6) witness; (2) Johnson's reliance on the outline prepared by counsel rendered the deposition a charade; (3) the outline creates a waiver of the antitrust defendants' attorney-client privilege or work product protection; (4) the antitrust defendants' improperly limited the scope of their denials to the conduct described in the criminal information; and (5) their Answers to the Complaint violate Fed. R. Civ. P. 8(b)(4) and Fed. R. Civ. P. 11(b)(4).  (Joint Letter, July 8, 2010 at 4–13.)  The plaintiffs request that the Court, pursuant to Rule 37, either: (A) strike the denials of off-label uses, deem the off-label uses to be established for all purposes in this case, prohibit the antitrust defendants from presenting any evidence or making arguments contrary to their denials, and order any such other relief deemed just and appropriate; or (B) permit the plaintiffs to depose both the antitrust defendants' antitrust counsel, who prepared the Answers, and their criminal defense counsel, who represented the antitrust defendants during the criminal investigation and plea.  (<u>Id.</u> at 13–14.)

#### B. Defendants

The antitrust defendants argue that they fully complied with the Court's orders and Rule 37(b) sanctions are inappropriate because: (1) Johnson was a particularly well-suited and fully prepared witness; (2) Johnson need not have personal knowledge; (3) it was appropriate for him to use an outline prepared by defense counsel that sets forth the factual bases of the denials because (a) the denials were based on facts derived from other legal proceedings, (b) defense

counsel may conduct the antitrust defendants' investigation and educate Johnson as the corporate

witness, and (c) Johnson thoroughly reviewed the facts marshaled by counsel and could provide

the antitrust defendants' position on the denials; (4) such an outline does not waive work product

protection; (5) defense counsel should not be designated as witnesses because (a) the factual

basis for the denials is intertwined with counsel's work product, (b) non-attorneys can be

designated as Rule 30(b)(6) witnesses even where only attorneys have knowledge of the

deposition topics, and (c) the plaintiffs would not or could not learn any more from Johnson than

they did had they asked probing questions of him; and (6) the plaintiffs cannot satisfy the factors

stated in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863 (3d Cir. 1984), to obtain dispositive

relief.  (Joint Letter, 15–32, July 8, 2010.)  Furthermore, the antitrust defendants argue that, to the

extent that the plaintiffs seek sanctions based on Rule 8(b): (1) the plaintiffs have ignored the

procedural requirements of Rule 11, (2) a sanction based on Rule 8(b)(4) is not appropriate, (3)

the antitrust defendants had adequate factual support under Rule 11(b)(5) for their denials, and

(4) Rule 11(b)(4) may not be invoked to resolve legal and factual disputes.  (Id. at 32–39.)


## IV. DISCUSSION

### A. Standard

In the Third Circuit, courts apply a two-step process and consider several factors when

asked to impose sanctions.  Republic of the Philippines v. Westinghouse Elec. Corp., 43 F.3d 65,

74 (3d Cir. 1995).  Under the first step, "the court must consider the conduct at issue and explain

why the conduct warrants sanction."  Id.  The considerations under this step include: (1) whether

"an attorney, rather than the client, is at fault"; (2) whether "a pattern of wrongdoing" or "grave

wrongdoing" exists; (3) whether prejudice has already occurred or has been avoided in time; and (4) whether any mitigating factors exist.  Id.; see also Poulis,747 F.2d at 868 (3d Cir. 1984) (considering the following factors when asked to dismiss case for discovery violations: "(1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense") (emphasis in original).

Under the second step, "the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate."  Republic, 43 F.3d at 74.  A basic tenet is "that sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court."  Bartos v. Pennsylvania, Civ. No. 08-366, 2010 WL 1816674, at *6 (M.D. Pa. May 5, 2010) (citing Klein v. Stahl, GMHB & Co. Maschinefabrik, 185 F.3d 98 (3d Cir. 1999)).

Here, the plaintiffs seek sanctions under Rule 37 for the antitrust defendants' alleged failure to comply with Rule 30 and the Court's orders.[8]  (See Joint Dispute Letter 13–14, July 8, 2010.)  Thus, the Court will consider whether the antitrust defendants have violated the Court's Orders and Rule 30.

---

[8] Although the plaintiffs also asserted that the defendants' Answers violated Fed. R. Civ. P. 8(b)(4) and 11(b)(4) (See Joint Letter 9–13, July 8, 2010), they have since explicitly stated that their request for sanctions is made under Rule 37 based on the antitrust defendants' failure to comply with discovery obligations and the Orders of this Court.  (Pls.' Letter 1, 1 n.2, 4–6, July 14, 2010, ECF No. 365.)

**B. Rule 30(b)(6) and the Court's Orders**

Pursuant to Rule 30(b)(6), "a party may take a deposition of an individual who is designated to testify on behalf of a company, corporation or government agency." Harris v. New Jersey, 259 F.R.D. 89, 92 (D.N.J. 2007). Use of Rule 30(b)(6) witnesses is meant to benefit the discovery process by

> more efficiently produc[ing] the most appropriate party for questioning, curb[ing] the elusive behavior of corporate agents who, one after another, know nothing about facts clearly available within the organization and suggest someone else has the requested knowledge, and reduc[ing] the number of depositions for which an organization's counsel must prepare agents and employees.

Id. at 92 (quoting Bracco Diagnostics Inc. v. Amersham Health Inc., Civ. No. 03-6025, 2005 U.S. Dist. LEXIS 26854, at *3 (D.N.J. Nov. 4, 2005)). A Rule 30(b)(6) deponent must be able to "testify about information known or reasonably available to the organization" called for by the deposition notice. Fed. R. Civ. P. 30(b)(6). Such testimony is binding on the organizational entity and goes beyond the deponent's personal knowledge about the topics. Harris, 259 F.R.D. at 92; State Farm Mut. Auto. Ins. Co. v. New Horizont, 250 F.R.D. 203, 216 (E.D. Pa. 2008) (stating that "[a] Rule 30(b)(6) designee 'is not simply testifying about matters within his or her personal knowledge, but rather is speaking for the corporation about matters to which the corporation has reasonable access'" (quoting In re Linerboard Antitrust Litig., 237 F.R.D. 373, 382 (E.D. Pa. 2006))).

The organizational entity has the duty to designate, produce, and prepare the Rule 30(b)(6) deponent. See Fed. R. Civ. P. 30(b)(6); accord Harris, 259 F.R.D. at 92 (stating that "[a] corporation has an affirmative duty to produce a representative who can answer questions that are within the scope of the matters described in the notice"); State Farm, 250 F.R.D. at 216.

This duty includes preparing the witness to state the organization's position, knowledge, subjective beliefs, and opinions on identified topics.  United States v. Taylor, 166 F.R.D. 356, 361–62 (M.D.N.C. 1996) (cited with approval in Black Horse Lane Assoc. v. Dow Chem. Corp., 228 F.3d 275, 303–04 (3d Cir. 2000)).  The entity must "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought . . . and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters."  Harris, 259 F.R.D. at 92 (quoting Mitsui & Co. (U.S.A.), Inc. v. P.R. Water Res. Auth., 93 F.R.D. 62, 67 (D.P.R. 1981)).  While such preparation can be labor intensive, "this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business."  Taylor, 166 F.R.D. at 362.

Because the duty of preparation extends beyond the deponent's personal knowledge and involves the knowledge of the entity, it may be "necessary [for] the deponent . . . [to] use documents, past employees or other resources to obtain responsive information."  Harris, 259 F.R.D. at 92; see also Taylor, 166 F.R.D. at 361; Wilson v. Lakner, 228 F.R.D. 524, 530 (D. Md. 2005) (stating that "Rule 30(b)(6) means what it says.  Corporations must act responsively; they are not entitled to declare themselves mere document-gatherers.  They must produce live witnesses who know or who can reasonably find out what happened in given circumstances.").  If an organization

> wishes to assert a position based on testimony from third parties, or their documents, the designee still must present an opinion as to why the corporation believes the facts should be so construed.  **The attorney for the corporation is not at liberty to manufacture the corporation's contentions.**  Rather, the corporation may designate a person to speak on its behalf and it is this position which the attorney must advocate.

-14-

Taylor, 166 F.R.D. at 362 (emphasis added).  In short

> [i]f a corporation has knowledge or a position as to a set of alleged facts or an area
> of inquiry, it is its officers, employees, agents or others who must present the
> position, give reasons for the position, and, more importantly, stand subject to
> cross-examination.  A party's trial attorney normally does not fit that bill.

Id.

In Black Horse, the Court of Appeals for the Third Circuit adopted the pragmatic

interpretation of Rule 37(d)'s requirement for a Rule 30(b)(6) witness "to appear."  Black Horse,

228 F.3d at 303–04.  For such a deposition, the Black Horse court held that a corporation's

production of "an unprepared witness is tantamount to a failure to appear that is sanctionable

under Rule 37(d)."  Id. at 304 (citing Taylor, 166 F.R.D. at 363) (internal quotations and

alterations omitted).  The appellate court found that "[i]n reality if a Rule 30(b)(6) witness is

unable to give useful information he is no more present for the deposition than would be a

deponent who physically appears for the deposition but sleeps through it."  Id. at 304 (stating

further that "[f]or courts to permit litigants to disregard the responsibilities that attend the

conduct of litigation would be tantamount to encouraging dilatory tactics" (quoting Al Barnett &

Son, Inc. v. Outboard Marine Corp., 611 F.2d 32, 35 (3d Cir. 1979) (internal quotations

omitted)).

Here, on three occasions, the Court ordered the antitrust defendants to produce a Rule

30(b)(6) witness to provide the factual basis on which they denied allegations of off-labels uses.

(Order, Apr. 15, 2010, ECF No. 318; Order, May 7, 2010, ECF No. 333; Order, Dec. 10, 2009,

ECF No. 264.)  For their second Rule 30(b)(6) deposition, the antitrust defendants designated

Rady Johnson to provide the facts upon which the antitrust defendants denied off-label uses and

"provide the factual basis and explanation as to how denials in its [A]nswers [sic] regarding off-

label uses and the marketing of the products for off-label uses is consistent with its public actions including but not limited to its guilty plea and marketing activity." (Johnson Dep. 13:17–25 (quoting Order, April 15, 2010, ECF No. 318); see also Johnson Dep. 11:8–14:7.)  The record, however, demonstrates that (1) contrary to the defendants' assertion, Johnson is not a particularly well-suited witness as his testimony primarily consisted of reciting an outline of responses PHV counsel prepared; and (2) the antitrust defendants were apparently not actually aware of the denials regarding off-label uses when they filed their Answers on November 3, 2010 or had no knowledge of any facts to support them.

First, the record dispels any assertion that Johnson is uniquely qualified to give Rule 30(b)(6) testimony.  His preparation consisted of reviewing documents received from and meeting with PHV counsel.  (See Johnson Dep. 18:2–13, 19:5–18, Johnson Decl. ¶¶ 3, 5.)  He was himself not involved in the preparation of the Answers and knew no one at Pfizer/Warner-Lambert who was.  (Johnson Dep. 28:12–17.)  As for his involvement in the antitrust defendants' 2004 criminal plea, Johnson stated that he was the "day-to-day guy" (Johnson Dep. 40:15–22) and that he was involved in coordinating corporate personnel with outside counsel, understanding the elements of the plea agreement, and securing approval of the agreement with the company's decision-makers.  (See Johnson Dep. 40:2–6; 44:8–12.)  The rest of the record, however, belies giving him too much credit for this role.  Johnson did not know whose decision it was to approve the plea (id. at 41:15–24), did not know or remember participating in negotiating or dictating the contents of the plea agreement (id. at 44:25–45:6), and did not appear to know how a guilty plea works (id. at 47:3–9 ("Q: And is it your understanding that by pleading guilty Warner-Lambert was admitting all the facts and allegations contained in the information?

-16-

A: If that is how the pleas work, then –.")  Finally, he did not initially recognize the plea agreement when it was handed to him.  (See id. at 43:16–25.)

Moreover, and more importantly, Johnson's testimony is a recitation of a document that PHV counsel prepared.  When Johnson was asked about the factual basis for the denials, the PHV counsel asked for a break before the witness answered.  (Id. at 50:15–20.)  When the deposition resumed several minutes later, PHV counsel announced that "Mr. Johnson will have an outline he will be working from to respond to these questions, which we will hand over to you."  (Id. at 50:21–51:14.)  This outline, produced for the first time at the deposition, was entitled "Factual Bases for the Denials Relating to Off-Label Allegations."  (Id. at 52:19–21.)  Johnson stated that he first received an earlier version of this document "probably whenever the meeting was we had a couple of weeks ago I think when we first met developing the outline as the bases from the documents that I had been reviewing. . . . Maybe two weeks ago."  (Id. at 53:18–54:12.)  He also stated that he did not write any aspect of this outline and that PHV counsel defending the deposition wrote it.  (Id. at 53:9–17.)

The outline is a 46-page document containing sections that (a) identify a particular allegation in the complaint, (b) repeat the text of the complaint, and (c) list in numbered paragraphs statements and citations that purport to provide reasons supporting the defendants' denials.  (Factual Bases for Denials Relating to Off-Label Allegations, ECF No. 362, Ex. B (hereinafter "Outline").)  When the witness was asked how the document had changed since his preparation began, and despite the fact that the witness had used it to answer the plaintiffs' questions, the PHV counsel asserted a work product objection.  (Johnson Dep. 54:13–20.)  PHV counsel then stated "I will represent for the record that the document represents facts that we

marshalled [sic] for the witness in compliance with the order." (<u>Id.</u> at 54:24–55:3.)  When the plaintiffs asked Johnson to put the outline away, PHV counsel would not let Johnson testify without it.  (<u>See</u> <u>id.</u> at 58:16–20.)  When the plaintiffs asked Johnson whether he could answer the questions without the outline, Johnson stated that he needed it "as an aid . . . to organize my thoughts" (<u>id.</u> at 59:5–7) and "to make sure I am providing you with the complete answer."  (<u>Id.</u> at 62:20–24; <u>see also</u> <u>id.</u> at 63:7–9 (stating "to ensure that I provide you a full answer").

Although the deponent said he needed it to organize "his" thoughts and PHV counsel professed that the deponent was not simply repeating the outline, Johnson essentially began reading from the outline to answer questions about specific allegations. (<u>Compare</u> Johnson Dep. 71:5–73:5 <u>with</u> Outline 9–12, ECF No. 362, Ex. B.)  When asked if the outline contained all the information supporting the denial of off-label uses, Johnson alternately stated that the information in the outline represented the "totality" of the evidence, that the evidence outline is sufficient to support a factual basis for the company's denial, or that there may be other policy documents that are consistent with the ones identified in the outline.  (<u>See</u> Johnson Dep. 76:2–9, 76:21–78:11.)  Johnson continued to rely on the outline to answer the questions until the plaintiffs' counsel began asking a series of questions as to whether the outline contained the factual basis for the denials, to which Johnson usually answered yes.  (<u>See, e.g.</u>, Johnson Dep. 164:4–8, 166:6–10, 195:25–201:15.)  When asked if he would add anything besides what was in the outline, Johnson usually answered no or some variation of "not at this time."  (<u>See, e.g.</u>, Johnson Dep. 166:11–14, 169:5–13, 195:25–201:15; <u>see also</u> <u>id.</u> at 190:18–191:8 ("A: No, the basis of our denial includes all the information on these pages but is not necessarily limited to that information, but we have nothing to add at this point").)

-18-

Second, the record now suggests that the antitrust defendants themselves were not actually aware of their denials regarding off-label uses when they submitted their Answers on November 3, 2009, nor did they have knowledge of any facts to support them.  At the first Rule 30(b)(6) deposition, the antitrust defendants' corporate witness repeatedly stated that the factual bases for the denials relied upon the assessment of facts by members of the company, in-house counsel, and outside counsel, but the witness did know the names of these individuals or what facts they had assessed.  (See Gibney Dep. 58:11–14 ("A: Again, my understanding is that the company and its outside counsel reviewed this particular allegation and did an assessment and based on that assessment, made its denial."); see also id. at 22:4–18, 45:6–9, 49:8–10, 49:13–16, 50:7–10, 52:2–5, 53:3–8, 54:9–12, 59:9–12, 60:8–11, 61:18–23, 64:18–21, 67:3–7, 78:4–8, 79:19–21, 81:4–7, 88:17–20, 89:16–18, 91:14–19, 92:25–93:3, 95:3–6, 98:3–7, 99:19–23, 102:1–12, 105:9–11, 118:16–18, 119:13–14, 147:2–8, 148:12–16, 150:9–16, 152:11–22, 153:2–6.)  PHV counsel may have recognized the problem because, during the first deposition, he regularly added the words "and the company" whenever the plaintiffs' counsels' question would indicate that only counsel made an assessment that led to the denials (Gibney Dep. 52:13, 53:25) to attempt to create a record indicating that the company and the outside counsel worked on—and would therefore be aware of—the factual bases for the denials.  Now, the same PHV counsel, who inserted the words "and the company" to create that record, asserts during this second deposition that no one at Pfizer/Warner-Lambert has knowledge of the factual basis for denials in the Answers.[9]  Lastly, Johnson's testimony does not contradict PHV counsel's

---

[9] These excepts demonstrate how PHV counsel, rather than the client, was the source of the facts upon which the antitrust defendants now assert they denied conduct attributable to them:

assertion that no one at the company is aware of the factual basis for the denials.  Johnson's

preparation did not consist of anything besides reviewing documents from PHV counsel and

meeting with them.  (<u>See</u> Johnson Dep. 18:2–13, 19:5–18, Johnson Decl. ¶¶ 3, 5.)  Moreover, he

testified that he knew of no person at the company who had been involved with developing the

denials in the Answers (Johnson Dep. 28:12–17), even though Gibney indicated the existence of

_____

      [PHV Counsel]: All of the facts provided to the witness were facts known to
      counsel and available to counsel at the time they drafted the answers.

(Johnson Dep. 56:25–57:4.)

      [PHV Counsel]: Every document referenced in here was known and available to
      counsel who prepared these answers. . . .
    . . . .
      [Plaintiffs' Counsel]: Well, I – I understand you to be saying, [Mr. PHV Counsel],
      that there is no one within Pfizer who knows the bases for denying the off-label
      use allegations in the complaint.  That is something else, and I – I understand that,
      but if that is –
      [PHV Counsel]: Obviously because we have been briefing this and the court is
      aware that the basis – the factual basis for the denials is found in prior policies.  It
      is found in prior documentation from other cases, the MDL, the Franklin case.  It
      is found in deposition testimony, which the court, if you have the transcript, said if
      they want us – if counsel wants us to marshall [sic] that through a 30(b)6 [sic]
      witness, so be it, and that is what we have done.
      So certainly, certainly the overwhelming majority of information is not known
      personally by anybody still at Pfizer.  That has been clear from the start of this.
      So, yes, there needs to be marshalling [sic] by the lawyers of the information
      known and knowable at the time of the answer to be given to a 30 – to educate a
      30(b)6 [sic] witness on those issues.

(Johnson Dep. 65:25–66:3, 67:5–68:8.)

     While personal knowledge on the part of the Rule 30(b)(6) witness is not required, the
corporation is the party defending an accusation and it is responsible for the denials.  The
transcript excerpts show that no one at the company now knows about the denials or, perhaps
ever knew, the facts to support them.  For reasons set forth herein, a direct response to whether
anyone knew facts to support the denials or even approved of the inclusion of the denials in the
Answers will be required.

such a person.

Consequently, on this record, the Court cannot find that the antitrust defendants satisfied their duties under Rules 37 and 30(b)(6).  The antitrust defendants have a duty to prepare and produce a witness who can provide facts underlying their denials and this duty includes a "conscientious good-faith endeavor to designate the persons having knowledge of the matters sought . . . and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters."  Harris, 259 F.R.D. at 92 (quoting Mitsui, 93 F.R.D. at 67).  Here, the antitrust defendants have taken no responsibility for preparing a Rule 30(b)(6) witness, but relied entirely on the knowledge of their PHV counsel, whose comments made it appear that the client had no responsibility for the content of the Answers either.

Moreover, the use of an outline created entirely by litigation counsel contradicts the purpose of Rule 30(b)(6) and turned the witness here into something even less than "a mere document-gatherer" and he surely was not a "live witness[] who know[s] or who can reasonably find out what happened in given circumstances."  Wilson, 228 F.R.D. at 530.  The witness did nothing more than review items the defendant's counsel "marshaled," most of which involved excerpts of depositions gathered as part of this and other litigations.  (See, e.g., Johnson Decl. ¶ 5, ECF No. 378; Johnson Dep. 67:12–23, 98:13–20.)  A properly prepared Rule 30(b)(6) must be able to provide facts known by corporate employees who authorized the disputed denials, state that the corporation relied entirely on investigation and decisions of outside counsel, or admit that there are no facts known by the corporation.  The Rule 30(b)(6) witness, however, cannot simply be a conduit for counsel's contentions.

Likewise, the outline and conduct of PHV counsel during the deposition reflect that the corporation and its counsel have inverted their respective roles and duties.  The clients are to possess the facts while counsel are to advocate the legal significance of these facts.  Here, however, it appears that PHV counsel have "manufacture[d] the corporation's contentions" rather than having the antitrust defendants designate a person to speak about the facts and their contentions.  Taylor, 166 F.R.D. at 361–62.  It is the antitrust defendants who must have knowledge of their own denials (and their factual bases), who must give reasons for them, and who must be subject to cross-examination; not their attorneys.  Id.  Thus, under the "pragmatic" interpretation of Rule 30(b)(6), the antitrust defendants' decision to do nothing to prepare their witness other than to have him recite counsel's compilation of information primarily from this and other lawsuits is tantamount to a failure to appear.  See Black Horse, 228 F.3d at 303.

Accordingly, the antitrust defendants have violated Rule 30(b)(6) for the second time and have failed to follow the Orders directing that they produce a witness to provide the factual basis for their denials and provide facts that reconcile their denials with their public acts, which appear to contradict these denials.

### C. Other Acts Contributing to Violations of Rule 30(b)(6) and the Court's Orders

The methods that PHV counsel used to defend the antitrust defendants at the Johnson deposition also contributed to their failure to produce an adequate Rule 30(b)(6) witness responsive to the plaintiffs' discovery demands and the Court's Orders.  The Federal Rules of Civil Procedure and case law instruct counsel and the parties on how to conduct themselves at a deposition.  Rule 30(c)(1) and (2) state:

> (1) Examination and Cross-Examination.  The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence,

except Rules 103 and 615. . . .

(2) Objections.  An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(1) & (2).  In Hall v. Clifton Precision, 150 F.R.D. 525, 528 (E.D. Pa. 1993),

the district court observed that

[t]he underlying purpose of a deposition is to find out what a witness saw, heard, or did – – what the witness thinks.  A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers.  The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record.  It is the witness – – not the lawyer – – who is the witness.  As an advocate, the lawyer is free to frame those facts in a manner favorable to the client, and also to make favorable and creative arguments of law.  But the lawyer is not entitled to be creative with the facts.  Rather, a lawyer must accept the facts as they develop.

Id. at 528.  The Hall court further noted that "[s]ince most objections, such as those grounded on

relevance or materiality, are preserved for trial, they need not be made.  As for those few

objections which would be waived if not made immediately, they should be stated pithily."  Id. at

530.  Moreover, "[i]t should go without saying that lawyers are strictly prohibited from making

any comments, either on or off the record, which might suggest or limit a witness's answer to an

unobjectionable question."  Id. at 531; see also Bd. of Trs. of the Leland Stanford Junior Univ. v.

Tyco Int'l Ltd., 253 F.R.D. 524, 526–27 (C.D. Cal. 2008) (quoting In re Amezaga, 195 B.R. 221,

228 (Bankr. D.P.R. 1996)); Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co., 201 F.R.D. 33, 40

(D. Mass. 2001).

Likewise, the Honorable Peggy A. Leen recently observed that counsel should know that the purpose of a deposition is to find out what the witness thinks, that objections should be concise, non-argumentative, and non-suggestive, and hence that counsel should not (1) make speaking, coaching or suggestive objections; (2) coach or change the witness's own words to form a legally convenient record; (3) frustrate or impede the fair examination of a deponent during the deposition by, for example, making constant objections and unnecessary remarks; (4) make speaking objections such as "if you remember," "if you know," "don't guess," "you've answered the question," and "do you understand the question"; or (5) state that counsel does not understand the question.  Mazzeo v. Gibbons, Civ. No. 08-1387, 2010 WL 3020021, at *2 (D. Nev. July 27, 2010); see also Hall, 150 F.R.D. at 530–31.

Here, the record demonstrates that PHV counsel made dozens of improper objections that were contrary to the directive to state objections "concisely in a nonargumentative and nonsuggestive manner."  Fed. R. Civ. P. 30(c)(2).  In fact, even the simplest of questions became an opportunity for PHV counsel to interject information to share with the deponent;[10] add to the

---

[10] For example:

Q: How much time did you spend reviewing this particular document?
A: This document, maybe an hour.
Q: I would like you to look at what has been –
[PHV Counsel]: I just note for the record because it is a little misleading that doesn't capture review of allegations not written in this document if reproduced in another document.

(Johnson Dep. 25:13–22.)

Q: Okay.  And let's also look at paragraph 105, 105 of the CVS complaint.
A. Sorry.

-24-

deponent's answers;[11] contribute his own nuanced views of the testimony, facts, pleadings, or the

criminal information—notwithstanding the deponent's answers;[12] interrupt the plaintiffs' counsel

---

Q: Okay. The complaint first mentions bipolar mental disorders, and I believe you have testified that Pfizer did in fact illegally promote Neurontin for that particular indication?
[PHV Counsel]: Sorry. Could you repeat the question?
[Plaintiffs' Counsel]: Could you read it back, please.
(Record read.)
[PHV Counsel]: Objection.  Mischaracterizes his testimony.  I believe he said consistent with the plea.
A: Consistent with the plea, bipolar disorder was admitted in the information and the plea.
Q. Was that plea consistent with Pfizer's conduct?
[PHV Counsel]: Objection.  Vague.
A: As is consistent with the plea.  That is what we admitted to.

(Id. at 87:8–88:7.)

[11] For example:

Q: Do you have any information what – what this other information is that would expound on the information provided to you by counsel on pages 9 through 12?
A: Oh, just an example would be other policies that would be consistent with some of the examples that we have identified here that show the duration of the policies over – over the multiple year period in question.
Q: Is it –
[PHV Counsel]: Let me also object and note for the record that as counsel is aware this information comes from the MDL case, from the Franklin case, and from the record in those cases that is incorporated in this case, and that is a massive record, you know, accounting for hundreds of depositions and millions of documents.
Q: Is it –
[PHV Counsel]: Let me also note for the record that counsel is essentially with your questions preventing the witness from listing the depositions that form the basis of the company's denial of this paragraph as well as addressing the issue of how the denial is consistent with the information included.

(Id. at 77:25–79:5.)

[12] For example:

mid-question;[13] express his umbrage at having to defend the antitrust defendants' denials;[14] and

---

Q: I read those complaints as being substantially similar, if not identical, the allegations in those two particular complaint paragraphs.
A: That is fair.
Q. Okay.  And then I assume or I hope I can assume that if I were to ask you the same series of questions that I asked with respect to paragraph 105, if I ask you those same questions with respect to paragraph 61 your answers would be the same?
[PHV Counsel]: I am sorry.  With respect to 105 and 61?
[Plaintiffs' Counsel]: Yes.
[PHV Counsel]: I object.  I mean there are – paragraph –they are different in terms of referencing the strategy, for example, and also I think referencing against pursuant to this strategy in paragraph 61, which does refer back to paragraph 60.  So they are different in terms of what they are –

(Id. at 162:24–163:22.)

[13] See, e.g., supra notes 10 and 11; see also:

Q: Okay. Turning to the next page, which addresses the LWD complaint, and I believe it is referred to by your counsel as the class complaint, and it groups paragraphs –
[PHV Counsel]: Now, Joe, I think just – you have observed that these are pretty much overlapping, so I don't know if you want to – if you want to go –

(Id. at 198:24–199:8.)

[PHV Counsel]: Objection.  Foundation.  You're assuming that –
[Plaintiffs' Counsel]: Let him answer the question.
[PHV Counsel]: Pfizer drafts –
[Plaintiffs' Counsel]: Let him answer the question.  If you have an objection as to form make the objection.  No speaking please, [PHV Counsel].
[PHV Counsel]: Yes, sir.  Objection.  Foundation, calls for speculation.
[Plaintiffs' Counsel]: Fine.
[PHV Counsel]: You can't make up facts.
[Plaintiffs' Counsel]: That – you shouldn't add commentary.  If you have an objection–
[PHV Counsel]: I am explaining my foundation objection.

(Id. at 104:14–105:9.)

make speaking objections.[15]  By the Court's count, more than 20% of the transcript is taken up by

---

[14] For example:

[PHV Counsel]: Let me also just state for the record, you know, putting to [sic] together literally all of the evidence that one would provide from all of the records, around 8 million pages in this case, and depositions and whatnot [sic] is a task that I think is more than needs to be done for a good faith basis for the factual – a good faith basis for the denials and the factual basis for those denials.  And so I have a kind of a general objection to the assumption that everything we would do to defend these allegations is contained in these answers to provide a good faith basis for the factual denials.

(Id. at 169:14–170:5.)  Besides being improper commentary, to the extent the antitrust defendants are arguing that they have a good faith basis for the denials, this is a non sequitur.  The Orders directed the production of a witness to testify about the facts supporting the denials, not just those that may support a "good faith" basis for them.

Similar conduct occurred at the March 17, 2010 deposition:

A: My understanding is that they assessed it.  Whatever that assessment looked like, they reviewed this allegation and, based on their assessment, they denied the allegation.
Q: Do you know what their basis for denying the allegation was?
A: No, I don't.
. . .
[PHV Counsel]: You want to go talk to a judge about whether we have to do more than that for this particular allegation, that's fine, we're happy to talk about; but please don't badgering [sic] the witness about it.
[Plaintiffs' Counsel]: Are you done, [PHV Counsel]?
[PHV Counsel]: I am.
[Plaintiffs' Counsel]: Because I think we might have a problem, sir, because –
[PHV Counsel]: I'll be happy to talk to the judge about that answer.  This is a very odd 30(b)(6) process, as you know.
[Plaintiffs' Counsel]: It seems to me it's a fundamental issue in a [sic] litigation to ask a defendant about the factual basis for a denial.
[PHV Counsel]: On 30(b)(6)? We can debate that. For this particular question with respect to paragraph 2, that is his answer.

(Gibney Dep. at 54:9–56:5.)

[15] See, e.g., supra notes 10, 11, 13.

-27-

PHV counsel speaking during this deposition.  PHV counsel sought to interpose what was

tantamount to testimony so often that the plaintiffs' counsel quipped that PHV counsel was

acting as if he was the deponent.[16]  In sum, PHV counsel turned the deposition from a question-

and-answer conversation between the deposing lawyer and the witness into an example of how

not to comply with Rule 30(c), see Calzaturficio, 201 F.R.D. at 40 (stating "[c]ounsel is not

entitled to assist his witnesses during a deposition"); Hall, 150 F.R.D. at 528 (explaining "[t]here

is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions,

deciding which questions the witness should answer, and [helping] the witness to formulate

answers."), and thereby exacerbated the defendant's failure to provide a responsive Rule 30(b)(6)

witness.[17]

---

[16] The colloquy was as follows:

 [PHV Counsel]: You said Franklin.  Certainly Johnson 36 and item 1 is a
clarification of –
[Plaintiffs' Counsel]: I didn't realize you were the witness, [PHV Counsel].
[PHV Counsel]: I am not.  You mischaracterized –
[Plaintiff's Other Counsel]: Three quarters of the day and you just realized he is
not the witness.

(Id. at 182:5–14.)

[17] The same PHV attorney represented the antitrust defendants at the March 17, 2010
Rule 30(b)(6) deposition, for which the Court already issued sanctions.  The Court notes that
PHV counsel also made comments not allowed under Rule 30(c) during that deposition by, for
example, adding information to the witness's testimony, as exemplified by the following
excerpts:

Q: What was the basis for the denial?
[PHV counsel]: Other than setting aside Information.
A: Other than setting aside the Information –

(Gibney Dep. 80:7–11.)

Q: And that was with respect to some – a potential civil liability as opposed to criminal?

[PHV counsel]: The document speaks for itself.  I don't know if you said it for the record that it is quoting something else.

A: Yes.  Again, the document here, whatever is said here, I'm not sure of the accuracy of this particular statement.

(Id. at 139:20–140:5.)

Q: Is it your understanding that a particular allegation has to be in the Information in order for Pfizer to admit a particular allegation?

A: Yes.

[PHV Counsel]: Hold on a moment Counsel.

[Plaintiffs' Counsel]: I'd like the record to – are you having a discussion with counsel?

[PHV Counsel]: Yes, because I – actually let me state a belated objection since you were calling for a legal conclusion.  We'll go back over this.  Let's take a two-minute break.

[break ensues]

. . . .

[PHV Counsel]: Joe, would you read the last question again, and the answer.

(Record read.)

A. I'd like to add to that.  In addition to what's in the Information, the company and its lawyers does an assessment beyond what's just in the Information to make those determinations.

(Id. at 102:16–103:6, 103:15–22.)

Q: Mr. Gibney, was there a civil and criminal investigation into Pfizer's conduct relating to the promotion of Neurontin for off-label uses?

[PHV Counsel]: Just to the best of his knowledge.

A: Yes.  To the best of my knowledge, yes, there was.

(Id. at 120:22–121:5; see also id. at 135:13–16 (same conduct)).

PHV Counsel also added a nuanced view of the antitrust defendants' conduct, exemplified as follows:

Q: When Warner-Lambert pled guilty in 2004 to the Information, which is Gibney No. 3, did it pay a fine?

[PHV Counsel]: And I just object to incomplete description of the Information.

[Plaintiffs' Counsel]: How so is it incomplete?

-29-

### D. Appropriate Sanction

Because the antitrust defendants' conduct warrants sanctions pursuant to Rules 30 and 37,

the Court must now "specifically consider the range of permissible sanctions and explain why

less severe alternatives to the sanction imposed are inadequate or inappropriate." Republic, 43

F.3d at 74.  Such sanctions should be "narrowly tailored to meet the misconduct, and should

--------

> [PHV Counsel]: Because they just didn't plead guilty in the air.  There are
> limitations in that information, and essentially what I think you're trying to do is
> get back into your answer without those limitations, since you asked, which we've
> discussed at length before lunch.
> [Plaintiffs' Counsel]: Since you raised that point, Mr. Keyte –
> Q. Mr. Gibney, what were the limitations with respect to the entry of Warner-
> Lambert's plea to cover the information Criminal No. 041050 that is Gibney No.
> 3?
> [PHV Counsel]: Objection.  The Information speaks for itself.

(Id. at 131:22–132:18.)

PHV Counsel obstructed the plaintiffs' ability to ask questions, as exemplified as follows:

> Q: Mr. Gibney, I would direct your attention to the second statement in paragraph
> 2, and I'll read it.  It starts out, "Pfizer's overall scheme included inter alia," and
> then I ask you to go down to he next-to-last line, it says, "fraudulently promoting
> off-label uses of Neurontin to build the monopoly."  Do you see that sir?
> A: I do.
> Q: That allegation concerns off-labels uses; is that correct?
> [PHV Counsel]: Objection 2.  Paragraph 2 is one sentence. If you want to read the
> entire sentence into the record, that would be fine; but you are mischaracterizing,
> not your complaint, the CVS complaint, paragraph 2, which is one sentence – out
> of one sentence.
> [Plaintiffs' Counsel]: Well, that's exactly what you requested me to do before. . . .

(Id. at 45:20–46:18; see also 42:24–43:10.)

The Court has highlighted these examples to show that PHV counsel's noncompliance
with Rule 30(c) on June 15, 2010 was not a one-time transgression and why the Court has
directed that New Jersey counsel to act as its exclusive counsel at the deposition that is to occur
as part of the sanctions imposed.

entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court." Bartos, 2010 WL 1816674, at *6 (citing Maschinefabrik, 185 F.3d 98).

Under Rule 37(b)(2)(A), sanctions may result from a failure to obey an order to permit or provide discovery. Rule 37(d)(1)(A)(i) also allows a court to impose sanctions if "a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i).

Under either Rule 30 or 37, the Court has discretion in issuing sanctions. Under Rule 37(b)(2), the Court may impose "just" sanctions for noncompliance, and similarly, under Rule 30(d)(2), the Court may issue "appropriate" sanctions. "Just" sanctions are those that impose proportional discipline for the harm caused. See Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir. 2007) (stating, upon an application of Rule 37 sanctions, that "the standard we find relevant in defining 'unjust' is the contrast between the nature of the violation of Rule 16 and the impact on the parties caused by the delay"); see also Harris v. City of Philadelphia, 47 F.3d 1311, 1330 (3d Cir. 1995) (stating that a Rule 37(b)(2) discovery "sanction must be 'just' . . . [and] be *specifically related* to the particular "claim" which was at issue in the order to provide discovery") (emphasis in original). Rules 30 and 37 provide examples of sanctions, including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii); see also Fed. R. Civ. P 37(d)(1)(A)(i), (d)(3) (incorporating

sanctions under subsection (b)(2)(A)(i)–(vii) for a Rule 30(b)(6) violation).  In addition to or

instead of these sanctions, the Court may order the party, its counsel, or both to pay the costs and

fees caused by their failure to obey the discovery order.  Fed. R. Civ. P. 37(b)(2)(C); see also

Fed. R. Civ. P. 37(d)(3) (applying same sanctions to Rule 30(b)(6) violations).

Rule 30(d)(2) also permits the imposition of "sanctions—including the reasonable

expenses and attorney's fees incurred by any party—on a person who impedes, delays, or

frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).  In addition, because a

Rule 30(b)(6) witness's testimony is binding on a corporation, some courts have prevented the

corporation from presenting evidence contrary to the Rule 30(b)(6)'s witness' testimony at trial.

See Wilson v. Lakner, 228 F.R.D. 524, 530 (D. Md. 2005) (citing Rainey v. Am. Forest & Paper

Assoc., 26 F. Supp. 2d 82, 94–95 (D.D.C. 1998) and Taylor, 166 F.R.D. 356, 363)).

Here, the plaintiffs ask that the Court: (1) strike the denials of off-label uses, (2) direct

that allegations concerning off-label uses set forth in the Complaints be taken as established for

all purposes in this case, (3) prohibit the antitrust defendants from presenting any evidence or

make any argument at any subsequent point in this case contrary to the allegations in the

Complaint, and (4) order any such other relief that the Court deems just and appropriate, or in the

alternative, (5) allow the plaintiffs to depose (a) the attorneys who represented the antitrust

defendants during the criminal investigation and plea, and (b) the attorneys who prepared the

November 3, 2009 Answers.

The Court, however, finds that these particular sanctions are not appropriate when it considers the history and nature of the antitrust defendants' noncompliance with Fed. R. Civ. P. 30(b)(6) and the Court Orders. Since late July 2009, the parties submitted monthly updates setting forth the status of every deposition and the antitrust defendants repeatedly failed to even name a Rule 30(b)(6) witness in September, October, and November 2009. In December 2009, the Court ordered the antitrust defendants to produce a Rule 30(b)(6) witness to testify about the factual basis for the denials of off-label uses (Order, Dec. 10, 2009, ECF No. 264), and later found that the antitrust defendants intentionally failed to produce such a witness as part of a non-responsive litigation tactic. (Order, Apr. 15, 2010, ECF No. 318.) At that time, the Court denied the potentially claim-dispositive requested sanctions, which are nearly identical to the sanctions the plaintiffs now seek, but ordered the antitrust defendants to provide a suitable Rule 30(b)(6) witness to provide the factual basis for the off-label uses denials and ordered the antitrust defendants to pay the fees and costs of both the March 27, 2010 deposition and the Court-ordered second Rule 30(b)(6) deposition. (Id.) At the second Rule 30(b)(6) deposition, the antitrust defendants revealed the full breadth of their dilemma. It appears that no one at Pfizer/Warner-Lambert actually knew or knows the factual bases for the Answers filed on November 3, 2009 or knows how their denials of off-label uses were consistent with their prior admissions. Rather, the record suggests that PHV counsel gathered the facts, selectively created the corpus of corporate knowledge, crafted the denials in the Answers, and then told the corporate client what the client "knows" about its own behavior. Because no adequately prepared witness has testified about what the company knew at the time the Answers were filed and the company has instead relied entirely on facts selected by its counsel, the plaintiffs have been unable "to obtain truthful

-33-

and complete information about relevant topics," Andrews v. Holloway, 256 F.R.D. 136, 141

(D.N.J. 2009), and the antitrust defendants have thereby interfered with the "truth-seeking

process."  See Republic, 43 F.3d at 73.  Thus, the Court finds that the conduct here has deprived

the plaintiffs a fair opportunity to obtain the factual basis of the antitrust defendants' denials and

thus an appropriate sanction is one that secures such a fair opportunity.

　　　　Because the difficulties here appear to be largely manufactured by PHV counsel, the

Court does not find that the appropriate sanction is to strike the denials of off-label uses, direct

that allegations in the complaints be considered established, or prohibit arguments that are

contrary to the allegations in the complaint.  See Constellation Newenergy, Inc., v. Powerweb,

Inc., Civ. No. 02-2733, 2004 WL 1784373, at *6 (E.D. Pa. Aug. 10, 2004) (noting that excluding

evidence would be an extreme sanction (citing Meyers v. Pennypack Woods Home Ownership

Ass'n, 559 F.2d 894, 905 (3d Cir. 1977))); see also Ofoedu v. St. Francis Hospital, 234 F.R.D.

26, 33 (D. Conn. 2006) (noting that striking portions of pleadings, prohibiting evidence, and

deeming disputed issues determined are more stringent sanctions).   Moreover, the Court has

already denied the antitrust defendants leave to amend their Answers (see Order, August 19,

2010, ECF No. 374), and thus the antitrust defendants are stuck with their denials in their present

form and will be left the impact of them in light of the evidence concerning off-label use.

Furthermore, the present record may allow the plaintiffs to seek the substance of the relief sought

in this application through arguments of estoppel and summary judgment.[18]  Finally, the other

sanctions that the Court will impose will provide the plaintiffs with the discovery they seek and

advance the goal of discovery: the disclosure of facts for a party to use to pursue a claim and

_____

　　　　[18] Nothing herein constitutes a finding as to whether either would succeed.

explore defenses, mount a defense, respond to the factual and legal allegations of an adversary, and avoid surprise at trial.  Accordingly, the Court will deny the request that it strike the denials in the Answers, deem established the allegations in the Complaints, or prohibit arguments contrary to the allegations in the Complaints.  <u>Accord</u> <u>Poulis</u>, 747 F.2d at 868 (considering the effectiveness of other sanctions and the extent of the party's personal responsibility, among others, in consideration of whether to dismiss case).

The Court also denies sanctions that would allow the plaintiffs to depose counsel.  The Court denies the request to depose the antitrust defendants' criminal attorneys whose representation culminated in the 2004 guilty plea because the plaintiffs have not shown that the testimony of criminal defense counsel who represented the antitrust defendants in 2004 will lead to the discovery of the factual basis for the antitrust defendants' 2009 denials.  The Court's denial of the request to depose antitrust defendants' PHV counsel, who prepared the Answers, is a closer question.  The record and PHV counsel's own representations indicate that only PHV counsel know the underlying factual basis for the denials of off-label uses.  The Court, however, finds that other sanctions render such a deposition unnecessary at this time.

The plaintiffs will be given a fair opportunity to obtain the factual basis for the antitrust defendants' denial by ordering that Rady Johnson be re-deposed as the antitrust defendants' Rule 30(b)(6) witness under three conditions.  <u>But see</u> <u>Ross v. J.P. Morgan Chase</u>, Civ. No. 2001/0040, 2003 WL 23218481, at *3 (D.V.I. Oct. 30, 2003) (stating "the mere fact that a party later has an opportunity to again depose the representative does not cure the initial inadequacy of the witness") (citation omitted).  First, Johnson must be prepared to state what steps Pfizer/Warner-Lambert took to prepare the Answers and the steps he took to prepare for the

deposition, which must include steps taken to either identify the Pfizer/Warner-Lambert employees who agreed to the inclusion of the off-label use denials in the November 3, 2009 Answers and interviewing these individuals about the factual basis for denials related to off-label uses or testifying that no such persons exist or ever existed.  The Court seeks to ensure a direct response to this important question and to end the circuitous route PHV counsel and the antitrust defendants have sought to take to avoid answering this question.

Second, only the antitrust defendants' local counsel will be allowed to defend Johnson at the deposition since PHV counsel's repeated noncompliance with Rule 30(c) has prevented the fair completion of this Rule 30(b)(6) deposition.  The deposition is so littered with improper objections, interjections, and comments that they often impeded the plaintiffs' ability to obtain unvarnished answers from the deponent.  The defendants' very experienced New Jersey counsel will fulfill the obligation to ensure the witness alone testifies and that objections are limited to those permitted by Rule 30(c) and are not speaking objections.  See Hall, 150 F.R.D. at 530–31; Mazzeo, 2010 WL 3020021, at *2.

Third, all objections lodged at the June 15, 2010 deposition are struck, including those based on work product.  For the non-work product objections, the Court finds that most of these objections violated Rule 30(c).  As to striking work product objections, the Court finds that there has been a waiver of ordinary work product protection on the subject of the denial of off-label uses, and there is a substantial need to pierce the work product shield.  See Fed. R. Civ. P. 26(3)(A)(ii) (stating that disclosure may occur if there is a substantial need and the materials, or equivalents, cannot be obtained without undue hardship).  The purpose of the work product protection is to promote the adversary system by sheltering an attorney's mental process so as to

provide a safe area to analyze and prepare a case.  In re Cendant Sec. Litig., 343 F.3d 658,

661–62 (3d Cir. 2003); Westinghouse Elec.  Corp. v. Republic of the Philippines, 951 F.2d 1414,

1428 (3d Cir. 1991) (stating that the work product doctrine protects the confidentiality of

materials prepared by or on behalf of attorneys in anticipation of litigation and thereby advances

the adversary system by enabling attorneys to prepare cases without fear that those materials will

be used against their clients (citing Hickman v. Taylor, 329 U.S. 495, 510–11 (1946)).  The

doctrine establishes two tiers of protection: ordinary and opinion work product.  In re Cendant

Corp. Litig, 343 F.3d 658, 663 (3d Cir. 2003) (citing In re Ford Motor Co., 110 F.3d 954, 962 n.7

(3d Cir. 1997)).[19]  The Court of Appeals for the Third Circuit has held that opinion work product

not only "includes such items as an attorney's legal strategy, his intended lines of proof, his

evaluation of the strengths and weaknesses of his case, and the inferences he draws from

interviews of witnesses," but also includes "the selection and compilation of documents by

counsel." Sporck v. Peil, 759 F.2d 312, 316–17 (3d Cir. 1985) (reciting that "[i]n selecting and

ordering a few documents out of thousands counsel could not help but reveal important aspects

of his understanding of the case" (quoting James Julian, Inc. v. Raytheon, Co., 93 F.R.D. 138,

144 (D. Del. 1982)).  Ordinary, non-opinion work product includes information and documents

that "do not contain opinion work product, i.e., writings which reflect an attorney's mental

---

[19] Ordinary work product is "work prepared in anticipation of litigation by an attorney or his agent [and] is discoverable only upon a showing of need and hardship."  In re Cendant, 343 F.3d at 663 (citing Fed. R. Civ. P. 26(b)(3)).  Opinion (or core) work product encompasses "the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation," Fed. R. Civ. P. 26(b)(3), and "is generally afforded near absolute protection from discovery."  In re Cendant, 343 F.3d at 663 (citing In re Ford Motor Co., 110 F.3d at 962 n.7 (3d Cir. 1997)).

-37-

impressions, conclusions, opinions or legal theories." Westinghouse, 951 F.2d at 1431 n.17.[20]

Waiver of work product protection occurs when disclosures are made that do not further the goal of "protect[ing] an attorney's work product from falling into the hands of an adversary." Westinghouse, 951 F.2d at 1428. Thus, work product protection is waived when "disclosure . . . enable[s] an adversary to gain access to the information." Id.; see Cooper Health Sys. v. Virtua Health, Inc., 259 F.R.D. 208, 215 (D.N.J. 2009) (stating "the essential question with respect to waiver of work product is whether the material has been kept away from adversaries" (citing Maldonado v. New Jersey, 225 F.R.D. 120, 131 (D.N.J. 2004))). Here, the antitrust defendants waived ordinary work product protection concerning their off-label use denials by handing over the outline their PHV counsel had prepared. PHV counsel allegedly sifted through "millions" of documents (see Johnson Dep. 78:13–20), composed an outline embodying that distillation of documents, and gave that work product directly to its adversaries. Moreover, to the extent the outline embodies facts, these facts are not protected from disclosure and are discoverable. Upjohn Co. v. United States, 449 U.S. 383, 395–96 (1981); Hickman, 329 U.S. at 507 (1947) (stating "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession"); Bogosian v. Gulf Oil Corp., 738 F.2d 587, 595 (3d Cir. 1984); see also Ford Motor Co. v. Edgewood Props., Inc., 257 F.R.D. 418, 422–23 (D.N.J. 2009) (finding that an affidavit reciting facts known by an affiant not to be work product, notwithstanding counsel's assistance writing it to prepare for litigation); Koch Materials Co. v. Shore Slurry Seal, Inc., 208

---

[20] The Federal Reporter and Westlaw include the quoted text in footnote 17, whereas LexisNexis includes it in footnote 18.

F.R.D. 109, 121 (D.N.J. 2002) (stating that "[t]he plaintiff may choose in what form it produces relevant factual information.  But, it cannot withhold relevant information on the basis of attorney work product"); United States v. Dentsply Int'l, Inc., 187 F.R.D. 152, 156–57 (D. Del. 1999) (collecting cases).  Thus, the antitrust defendants' disclosure of the outline waived any ordinary work product shroud they may have enjoyed had it not been given to the plaintiffs.

The record also demonstrates that the PHV counsel and the antitrust defendants waived work product protection by putting work product "in issue" because they placed the entire corpus of corporate knowledge regarding the off-label use denials within the parameters of work product set forth in a document they gave to the plaintiffs.  As discussed above, at the first Rule 30(b)(6) deposition, the antitrust defendants' corporate witness repeatedly stated that the factual bases for the denials relied upon the assessment in-house counsel, outside counsel, and allegedly unknown members of the company, whose existence PHV reinforced by adding the words "and the company" to the plaintiffs' questions.  Now the record demonstrates, through the words of this same PHV counsel, that neither in-house counsel nor anyone else at Pfizer/Warner-Lambert, were aware of the factual bases for the Answers.  (Johnson Dep. 56:25–57:4, 65:25–66:3, 67:5–69:8; see also Gibney Dep. 52:13, 53:25, 58:11–14, 114:13–115:10.)  Thus, the record suggests that the denials were the creation of counsel and to the extent the defendants have chosen to embrace these defenses along with the factual bases created by counsel, the work product of counsel is in issue. Cf. Harding v. Dana Transp., Inc., 914 F. Supp. 1084 (D.N.J. 1996) (holding that work product protection was impliedly waived when a defendant placed an internal investigation into issue by asserting a defense based on the investigation into a plaintiff's claims).  PHV counsel also put work product into issue by having the second Rule 30(b)(6)

-39-

witness rely on the four corners of the outline PHV counsel prepared to testify about the factual

bases for the denials while using work product objections to curtail exploration of these factual

bases.[21]  Thus, the antitrust defendants have placed counsel's work product in issue by (1) relying

---

[21] This is shown in PHV counsel's various statements at the deposition:

[Plaintiffs' Counsel]: All right, Mr. Johnson, just to clarify, the answer that you
gave that was based on your personal interpretation of what was covered or
included in unapproved uses; is that correct?
A: I mean it – I am laying out a possibility.
[Plaintiffs' Counsel]: You are laying out a possibility, but this was not – I mean
were you – did you discuss with counsel in preparation for today's deposition the
term unapproved uses –
[PHV Counsel]: Again –
[Plaintiffs' Counsel]:  – as defined in this information?
[PHV Counsel]: Let me object in terms of work product.  You may communicate
what the company's position is.  You may not communicate what our discussions
were about that.
[Plaintiffs' Counsel]:  Well, I am going to take issue with that, [PHV Counsel],
because Pfizer has taken the position that they are not asserting a reliance on
counsel defense as made clear in Judge Schwartz' [sic] ordered testimony as to the
facts not covered by attorney-client or work product in any event, and to the extent
that you've provided counsel with an outline or script to help him with respect to
the – the answer he gives at this deposition I also think that you've waived any
attorney-client and/or work product privilege.
[PHV Counsel]: Well, you've mischaracterized the – it is not a script.  It is an aid
as he discussed.  We did provide to him the company's position with respect to
this subject, and he is – and of course he can communicate that as well as his own
personal view as well given prior testimony with respect to his involvement in
these matters.
            With respect to our discussions about that, we do assert the attorney work
product and stand on that.  So I would instruct the witness not to – to disclose our
discussions about that, the background of that.

(Johnson Dep. at 100:9–102:10.)

[Plaintiffs' Counsel]: Over those two weeks, has the substance of this outline
changed in any significant part?
[PHV Counsel]: Let me just object in terms of work product.  You can address the
factual bases, the facts that we provide you in that outline, and you may answer
that question.

on counsel's collection of facts and then (2) simultaneously using work product protection to block discovery of facts regarding those bases.  See In re Human Tissue Prods. Liab. Litig., 255 F.R.D. 151, 158 (2008) (stating that "courts have found an implied waiver of the attorney-client and/or work product privilege where a client affirmatively places otherwise privileged information at issue in the case"); Ford Motor Co. v. Edgewood Prop., Civ. No. 06-1278, 2010 WL 2516461, at *4 (D.N.J. June 14, 2010) (stating that "[t]his 'at issue' doctrine applies if a party asserts a claim or defense that will be proven by use of privileged materials" (citing United States v. Sensient Colors, Inc., Civ. No. 07-1275, 2009 WL 2905474, at *7 (D.N.J. Sep. 9, 2009))); see also Nobles, 422 U.S. at 240 n.14 (stating that "[c]ounsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses.  When so used, there normally is no waiver.  But where . . . counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents."); Bowman v. Am. Homecare Supply, LLC, Civ. No. 07-3945, 2009 WL 1873667, at *3–5 (E.D. Pa. June 25, 2009).  Accordingly, the antitrust defendants cannot remain ignorant of their own denials, particularly in the face of their duty to prepare a Rule 30(B)(6) witness on those denials, place the entire corpus of corporate knowledge within the parameters of its work product, and parrot work product selections as the bases for their denials while simultaneously expect work product protection to shield inquiry into those selections.

Moreover, the plaintiffs have a substantial need that pierces the work product shield.  Courts can order the production of work product protected material "upon a showing of

---

(Johnson Dep. 54:13–20.)

substantial need and inability to obtain the equivalent without undue hardship." Upjohn, 449 U.S. at 400; see also Fed. R. Civ. P. 26(b)(3).  Here, the plaintiffs seek only the factual basis for the antitrust defendants' denials and not the strategies or evaluations of counsel.  Substantial need exists because, by the antitrust defendants' own admission, the only source to probe to reconcile their off-label use denials with their public actions and criminal guilty plea is counsel's work product since apparently no one at the company is able to do so.  (See Johnson Dep. 65:25–66:3, 67:–69:8.)  On two occasions, the antitrust defendants have passed on their responsibility to provide Rule 30(b)(6) witnesses to answer these basic questions and chose instead to produce counsel's work product and read from it to provide responses to questions. (See, e.g., id. at 71:5–73:5.)  Because this information is fundamental to the plaintiffs' claims and ability to challenge the antitrust defendants' defenses and the plaintiffs have no other means to obtain this information, the Court finds that substantial need exists to pierce work product protection.

    For all of these reasons, all objections lodged during the June 15, 2010 depositions are struck and to the extent the witness did not respond to a question based upon a work product objection or any other objection, the questions may be re-asked and answers shall be provided.

    The Court also finds that the antitrust defendants shall be limited in the evidence they can offer at trial to: (1) that which has been disclosed in the depositions taken March 17, 2010, June 15, 2010, and the additional deposition that is now permitted and (2) documents and information specifically set forth in the outline produced during the June 15, 2010 deposition, but any and all expanding language in the outline (i.e. "[a]mong this testimony is the following . . ."; "include, but not limited to . . ."; "including that . . ."; etc.) will be struck.  The Court finds that such

language provides an avenue for the antitrust defendants to attempt to present evidence not disclosed in the outline or at the depositions.  Similarly, striking such language avoids any surprises at trial concerning the facts the antitrust defendants will present to support their denials of off-label uses.  The antitrust defendants have had numerous opportunities to present their proofs and they will be bound by, and limited to, the evidence they have explicitly presented.

The antitrust defendants will also be required to pay all fees and costs associated with this application and the deposition as the application was filed and the deposition is occurring only because of their violations.

Lastly, the Court will require the parties to seek assistance from the Court during the deposition for any disputes that arise.  Failure to seek such assistance at that time will constitute a waiver of the right to seek relief.  The Court imposes this obligation to ensure the prompt resolution of any further disputes at a time when all parties are aware of the purpose of the question and the basis of the objection and to avoid further expenditures of party and judicial resources.

### V. <u>CONCLUSION</u>

For the reasons stated herein, the application for sanctions against the antitrust defendants is granted in part and denied in part.  The plaintiffs' request for sanctions pursuant to Fed. R. Civ. P. 37 in the form of striking the antitrust defendants' Answers, deeming certain facts established, or permitting the deposition of the antitrust defendants' attorneys is denied.  The Court, however, finds that sanctions are just and appropriate and deems it appropriate to impose the following sanctions pursuant to Fed. R. Civ. P. 37:

(1) Rule 30(b)(6) witness Rady Johnson will be re-deposed, no later than twenty-one

calendar days before the date on which motions for summary judgment are to be filed, as the antitrust defendants' Rule 30(b)(6) witness, to provide the responses required by the December and March Orders and to answer the plaintiffs' questions that seek: (a) the facts upon which they have denied off-label uses; (b) an explanation as to how the denials of off-label uses in their Answers is consistent with their public actions, including but not limited to the guilty plea and marketing activity; (c) a description of their off-label marketing activity; (d) the steps that the antitrust defendants took to review their Answers before they were filed, or testify that no steps were taken by the defendants themselves; (e) the steps that Johnson took to prepare for the deposition, including interviewing the individuals who approved of the antitrust defendants' Answers, dated November 3, 2009, or testify that no such person(s) exist(s); and (f) the names of the defendants' employee(s) who knew or know(s) the factual bases for those denials or testify that no such person(s) exist(s);

(2) the antitrust defendants' New Jersey counsel will act as the defendant's exclusive counsel for Mr. Johnson during the deposition.  Speaking objections are prohibited and the protocols set forth in Hall v. Clifton Precision, 150 F.R.D. 525 (E.D. Pa. 1993), shall apply;

(3) all objections posed during the June 15, 2010 deposition, including those based on work product on the subject of the denial of off-label uses, are struck and the witness shall provide answers to all question to which there have been an objection;

(4) the antitrust defendants shall pay the fees and costs the plaintiffs incurred in connection with the July 8, 2010 joint dispute letter and the fees and costs for conducting

the new deposition of Rady Johnson;

(5) at trial, the antitrust defendants will be prohibited from offering any evidence regarding their off-label denials except for: (a) the evidence disclosed in the deposition testimony of Mr. Gibney and Mr. Johnson and (b) the evidence specifically listed in the outline entitled "Factual Bases for Denials Relating to Off-Label Allegations."  All expansive language such as, "including but not limited to," is struck from the outline and may not be used to bring in other evidence; and

(6) if disputes arise during the deposition that require Court intervention, then the parties will seek such intervention from the Court during the deposition.  Failure to seek assistance at that time will constitute a waiver of the right to seek relief.

Nothing herein prevents the plaintiffs from making a motion for summary judgment or arguing estoppel on the issue of off-label uses.

s/Patty Shwartz
**UNITED STATES MAGISTRATE JUDGE**

Dated: January 25, 2011