Barry L. Refsin
HANGLEY ARONCHICK SEGAL
    PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
(215) 568-0300 fax
*Attorneys for CVS and Rite Aid*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **IN RE NEURONTIN ANTITRUST** : | **Honorable Faith S. Hochberg, U.S.D.J.** |
| **LITIGATION** : | **MDL Docket No.: 1479** |
| : | **Master Civil Action No. 02-1390 (FSH)** |
| : | |
| **This Document Relates to:** : | **HIGHLY CONFIDENTIAL:** |
| **ALL ACTIONS** : | **OUTSIDE COUNSEL ONLY** |
| : | |

---

## INDIVIDUAL PLAINTIFFS' RESPONSE TO PFIZER'S BRIEF ON CAUSATION

---

## UNSEALED BY AGREEMENT OF PARTIES
This Memorandum was originally filed under seal as Doc. No. 745, but, after consultation, the
parties have agreed that it may be filed unsealed.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES ...................................................................... ii

TABLE OF ABBREVIATIONS .............................................................. iii

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................... 3

   I.   PFIZER'S OPENING BRIEF IS AN IMPROPER MOTION
       FOR RECONSIDERATION. ............................................................ 3

  II.   THE COURT HAS ALREADY CONSIDERED AND
       REJECTED EACH OF PFIZER'S ARGUMENTS. ....................... 4

       A.  Purepac's Manufacturing Problems Were Not a Legal
           Impediment to the Entry of Other Generic Manufacturers. ..................... 4

       B.  Other Manufacturers Were Prepared to Come to Market on
           or About December 2002. ......................................................... 6

       C.  Pfizer's Liability Arguments Are All Disputed. ....................... 7

          1. The Listing and Litigation of the '476 and '479 Patents. .................... 7

          2. The '482 Case Against Apotex. ........................................... 8

          3. Issuance of the '482 Patent. ................................................. 9

CONCLUSION ......................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Bristol-Myers Squibb Co. v. Ben Venue Labs.*, 90 F. Supp. 2d
   540 (D.N.J. 2000) ...............................................................................5, 6

*City of Pittsburgh v. W. Penn Power*, 147 F.3d 256 (3d Cir.
   1998) .................................................................................................5, 6

*Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 18 F. Supp.
   2d 464 (D.N.J. 1998) ...............................................................................4

*G-69 v. Degnan*, 748 F. Supp. 274 (D.N.J. 1990) ....................................3

*In re Neurontin Antitrust Litig.*, No. 02-1390, 2013 WL
   4042460 (D.N.J. Aug. 8, 2013) .......................................................2, 5, 7

*Lazaridis v. Wehmer*, 591 F.3d 666 (3d Cir. 2010) ...................................4

*Maldonado v. Lucca*, 636 F. Supp. 621 (D.N.J. 1986).............................3

*Nepomuceno v. Astellas U.S. LLC*, No. 11-4532 (FSH), 2013
   WL 5333804 (D.N.J. Sept. 23, 2013)..............................................3, 4

**<u>Statutes</u>**

21 U.S.C. § 355(j)(5)(B)(iii) .......................................................................5

## <u>TABLE OF ABBREVIATIONS</u>

This supplemental brief cites the briefs and exhibits previously submitted in connection with the parties' motions for summary judgment.  The following table identifies the abbreviations used to identify those documents:

| Abbreviation | Document |
|---|---|
| JS ¶ __ | Parties' Joint Statement of Undisputed Material Facts (May 1, 2012) (ECF No. 523) |
| Pfizer SJ Br. | Memorandum in Support of Pfizer's Motion for Summary Judgment (April 30, 2012) (ECF No.516) (unredacted version)<br>Memorandum in Support of Pfizer's Motion for Summary Judgment (July 2, 2012) (ECF No. 590) (revised and redacted version) |
| Pfizer Op. Br. | Pfizer's Opening Brief on Causation (June 20, 2014) (ECF No. 742) |
| Pl. *Daubert* Opp. | Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Witnesses (Oct. 9, 2012) (ECF No. 663) |
| Pl. Op. Br. | Plaintiffs' Opening Brief on Causation (June 20, 2014) (ECF No. 741) |
| Pl. SJ Br. | Revised Memorandum in Support of Plaintiffs' Motion for Summary Judgment (July 2, 2012) (ECF No. 583) |
| Pl. SJ Opp. | Plaintiffs' Revised Opposition to Pfizer's Motion for Summary Judgment (July 2, 2012) (ECF No. 584) |
| RPS ¶ __ | Plaintiffs' Response to Pfizer's Revised Statement of Undisputed Facts (July 2, 2012) (the right column of Pfizer's chart) (ECF No. 593) |

CVS, Rite Aid, and the Walgreen Plaintiffs ("Individual Plaintiffs" or "Plaintiffs") submit this response to Pfizer's brief on causation (ECF No. 742).

## INTRODUCTION

Plaintiffs' Opening Brief (ECF No. 741) outlined the evidence that Plaintiffs intend to present at trial to show that Pfizer's concerted effort to delay the entry of generic Neurontin had its intended effect. That evidence establishes that Pfizer was desperate to delay the entry of generic Neurontin and supports at least two alternate entry scenarios under which generic entry could have occurred earlier.[1]

Neither of these alternate entry scenarios involves Purepac introducing the first generic in the but-for world. Rather, both scenarios rely on evidence that Apotex would have triggered Purepac's first-to-file exclusivity if not for Pfizer's efforts to prevent generic entry. Pfizer recognized the likelihood of such a result in a damage model that it relied on in the '482 Patent litigation, it is precisely how

---

[1] In opposition to Pfizer's summary judgment motion, Plaintiffs also identified evidence from which a jury might conclude that Purepac could have entered earlier than it actually did (Pl. SJ Opp. 59 n.29). Plaintiffs did not detail that evidence in their Opening Brief in part because it is not clear what the evidence will show with respect to Purepac's decision to settle the '482 Patent litigation. This Court's summary judgment order granted Plaintiffs the opportunity to take discovery on Pfizer's patent settlements, but referred the parties to Magistrate Judge Hammer to manage that discovery. On November 26, 2013, the parties filed a Joint Dispute letter asking Judge Hammer to resolve disputes with respect to the scope of settlement discovery (ECF No. 718). On June 4, 2014, Plaintiffs wrote to Judge Hammer reminding him of the pendency of this dispute (ECF No. 736). This issue must be resolved promptly to permit Plaintiffs to make an assessment of the evidence that they will present with respect to Purepac and to otherwise prepare for trial beginning November 2014.

Purepac's exclusivity on the '476 Patent was triggered and resolved, and the Court recognized this "Apotex trigger" in its summary judgment opinion. Plaintiffs will rely on evidence showing that Pfizer repeatedly listed, sued, and/or maintained suit on patents that it knew did not provide any exclusivity for Neurontin, and that if it had not done so, entry would have necessarily occurred earlier. Contrary to Pfizer's suggestion, Plaintiffs do not rely on their economist Dr. Keith Leffler to show what would have happened in the absence of Pfizer's misconduct as this is not an area for economic expertise. Dr. Leffler simply accepted as an input to his damage calculation that Plaintiffs will be able to prove that generic entry would have occurred in or about December 2002. *See* Pl. *Daubert* Opp. 20.

Pfizer's Opening Brief ignores the evidence on causation that Plaintiffs presented in opposition to Pfizer's motion for summary judgment and asks the Court to reconsider virtually every aspect of its opinion denying that motion. *See In re Neurontin Antitrust Litig.*, No. 02-1390, 2013 WL 4042460 (D.N.J. Aug. 8, 2013). This request is untimely and does not identify any appropriate grounds for reconsideration under Local Rule 7.1. Pfizer merely rehashes the arguments that it made and this Court previously rejected.[2]

---

[2] The only thing that has changed since the Court's opinion is Pfizer's agreement to pay $190 million to the Direct Purchaser Class to settle the same claims at issue here. That decision does not suggest that Pfizer has much confidence in the arguments that it now asks the Court to reconsider.

**ARGUMENT**

**I.  PFIZER'S OPENING BRIEF IS AN IMPROPER MOTION FOR RECONSIDERATION.**

Pfizer asks the Court to "reconsider its ruling on Pfizer's original Motion for Summary Judgment (ECF No. 515) and grant summary judgment for Pfizer." Pfizer Op. Br. 3.  But Pfizer offers no basis for this Court to reconsider the opinion that it entered almost a year ago, and its request should therefore be denied.

Local Rule 7.1(i) sets out the requirements for a motion for reconsideration. Such motions "shall be served and filed within 14 days after the entry of the order or judgment on the original motion" and must include a brief identifying the matter or controlling decisions overlooked by the court.  D.N.J. Local Rule 7.1(i). Motions for reconsideration may be granted only if:  "(1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or fact or prevent manifest injustice."  *Nepomuceno v. Astellas U.S. LLC*, No. 11-4532 (FSH), 2013 WL 5333804, at *1 (D.N.J. Sept. 23, 2013) (Hochberg, J.).  Such motions "are granted 'very sparingly'"  *Id*. (quoting *Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986)).

A party seeking reconsideration "must show more than a disagreement with the Court's decision."  *Id*. (quoting *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990)).  It is not sufficient to present a "mere 'recapitulation of the cases and

arguments considered by the court before rendering its original decision.'" *Id.*

(quoting *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 18 F. Supp. 2d 464,

466 (D.N.J. 1998)).  The fact that an issue previously briefed was not mentioned in

a court's opinion does not mean that it was overlooked.  *Id.* at *2 n.1.  And, a

motion for reconsideration is improper when a litigant "ask[s] the Court to rethink

what it had already thought through – rightly or wrongly." *Id.* at 1.  Where a party

simply advances the same arguments made previously, the motion for

reconsideration should be denied.  *See Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d

Cir. 2010) (upholding denial of motion for reconsideration where litigant

"advanced the same arguments that were in his complaint and motions").

Under these standards, Pfizer's request is wholly improper.  It is almost a

year too late.  Its brief does not identify a single issue or controlling decision

overlooked by this Court.  Instead, it reiterates almost verbatim the arguments that

Pfizer originally made in its motion for summary judgment.  *Compare* Pfizer Op.

Br. *with* Pfizer SJ Br. 51-60.  These arguments were wrong last year, and they are

still wrong today.  They do not justify reconsideration of Pfizer's motion.

## II.   THE COURT HAS ALREADY CONSIDERED AND REJECTED EACH OF PFIZER'S ARGUMENTS.

### A.   Purepac's Manufacturing Problems Were Not a Legal Impediment to the Entry of Other Generic Manufacturers.

Pfizer's Opening Brief asserts that Pfizer is entitled to summary judgment

because Purepac "would not have been ready and able to sell its generic gabapentin

until the fall of 2004." Pfizer Op. Br. 1-2. But as this Court's summary judgment opinion recognized, Plaintiffs' causation theory rests primarily on Apotex triggering Purepac's 180-day first-filer exclusivity by obtaining a court order of non-infringement. *See Neurontin*, 2013 WL 4042460, at *9-10. This is precisely the theory identified in Plaintiffs' summary judgment briefs, and in their Opening Brief on causation. Pl. SJ Br. 2 at n.1; Pl. SJ Opp. 52-59; Pl. Op. Br. 8-11.

Because a final court order of non-infringement in Apotex's favor would have triggered Purepac's first-to-file exclusivity and allowed multiple generic companies to enter the market in or around December 2002, *see* 21 U.S.C. § 355(j)(5)(B)(iii), the Purepac manufacturing issues are irrelevant. Significantly, Plaintiffs will be able to show at trial that Purepac's first-to-file exclusivity on the '476 Patent was resolved precisely the same way – it was triggered by a court order in favor of Apotex and ran out before generic entry could occur. Pl. Op. Br. 10. And, Pfizer itself offered a damage calculation during litigation of the '482 Patent based on Apotex triggering Purepac's exclusivity. *Id.* at 10-11.

Pfizer's continued citation of *City of Pittsburgh v. W. Penn Power*, 147 F.3d 256 (3d Cir. 1998), does not add anything. Pfizer cited it to support its summary judgment motion. Pfizer SJ Br. 51-53. But the case does not address allegations like those in this case that the defendants abused the regulatory system to prevent competition. Such allegations were at issue in *Bristol-Myers Squibb Co. v. Ben*

*Venue Labs.*, 90 F. Supp. 2d 540, 545-46 (D.N.J. 2000), where this Court distinguished *City of Pittsburgh* on the grounds that the brand manufacturer misused the legal system to foreclose generic competition.  That is exactly what Pfizer did here.  The Court was correct not to adopt Pfizer's reliance on *City of Pittsburgh* in its summary judgment opinion.

### B.    Other Manufacturers Were Prepared to Come to Market on or About December 2002.

Pfizer asserts that Plaintiffs have no evidence that other generic manufactures were prepared to launch a generic product in or around December 2002.  Pfizer Op. Br. 12-13.  This argument flat out ignores the evidence presented by Plaintiffs in opposition to Pfizer's summary judgment motion.  There, Plaintiffs set out chapter and verse with respect to each generic manufacturers' preparedness to enter the market on or about December 2002 had Purepac's exclusivity been triggered and expired.  *See* RPS ¶ 48.

In particular, Plaintiffs identified evidence that, in preparation to enter the market, Apotex had purchased *$38,000,000* worth of raw materials, including sufficient Active Pharmaceutical Ingredient (API) to produce *120 million* generic Neurontin capsules.  *Id.* ¶ 48(d).  Teva, Ivax, and  Eon also each had access to sufficient API to introduce generic Neurontin and had the necessary equipment to begin manufacturing it in or around December 2002.  *Id.* ¶ 48(e), (f), (g).

Pfizer's refusal to acknowledge this evidence before the Court on summary

judgment is not grounds for reconsideration.

### C.    Pfizer's Liability Arguments Are All Disputed.

This Court denied summary judgment on "the anticompetitive conduct element of Plaintiffs' monopolization claims because there are numerous disputed issues of material fact." *Neurontin*, 2013 WL 4042460, at *9. Despite this conclusion, Pfizer seeks to reargue: (1) whether Pfizer had reason to list and sue on the '476 and '479 Patents; (2) the basis of the '482 Patent case against Apotex; and (3) the timing of the issuance of the '482 Patent. Plaintiffs' evidence on each of these liability issues was set out in detail in opposition to Pfizer's motion for summary judgment, and the Court correctly denied summary judgment on them.

### 1.    The Listing and Litigation of the '476 and '479 Patents.

Plaintiffs presented detailed evidence demonstrating that Pfizer wrongfully listed and sued on the '476 and '479 Patents. *See* Pl. SJ Opp. 29-37. That evidence included internal documents created *while* Pfizer was pursing the '476 and '479 cases in which its own employees expressed the opinion that neither patent provided exclusivity with respect to Neurontin – the '476 Patent because it "was not utilized in the synthesis of Neurontin," and the '479 Patent because it did not cover any "labeling claim," Pl. SJ Br. 33 (quoting JS ¶¶ 134, 136).

Pfizer ignores all of Plaintiffs' evidence, and simply relies on the same summary judgment argument that this Court refused to adopt – that no jury could find its claims to be baseless because courts had denied the generic manufacturers'

motions for attorneys' fees and Rule 11 sanctions.  Pfizer Op. Br. 6.  As Plaintiffs

demonstrated on summary judgment, these rulings were based on the record

presented to those courts and assumed Pfizer's good faith.  Those courts did not

have evidence of:  (1) Pfizer's overall scheme to delay generic entry, (2) Pfizer's

belief that the patents that it was suing on did not provide exclusivity for

Neurontin, (3) the admission of a Pfizer employee that the '476 Patent

infringement theory was based on pure "speculation," (4) Pfizer's filing of new

'476 Patent lawsuits despite 18 months of discovery establishing that the '476

Patent was not infringed, and (5) Pfizer's repeated misrepresentations to the courts

hearing its claims based on the '479 Patent.  *See* Pl. SJ Opp. 36-37, 39-40.

## 2.     The '482 Case Against Apotex.

Pfizer argues that the Court should reconsider whether Plaintiffs raised a

triable issue of fact with respect to their claim that Pfizer knew that its '482 Patent

claim against Apotex was baseless by no later than March 2001 when Apotex

sought summary judgment on it.  It claims to be entitled to summary judgment in

this case because Judge Lifland made a preliminary ruling suggesting that Pfizer's

claim interpretation was correct.  Pfizer Op. Br. 8.  Once again, Pfizer made this

precise argument in its summary judgment motion.  *See* Pfizer SJ Br. 55.  And,

Plaintiffs demonstrated then that the statements to which Pfizer directed this Court

did not address Apotex's formulation at all.  Pl. SJ Opp. 47.  Rather, they

concerned Purepac's very different product which used one of the adjuvants excluded by the '482 Patent "as a colorant in the capsule shells." *Id.* On this issue, Judge Lifland tended to agree that "the minuscule amount of titanium dioxide in Purepac's capsule shells is irrelevant" and preliminarily concluded that the "infringement question should focus on substances that are intimately mixed with gabapentin." *Id.*

In contrast, Apotex intimately mixed sodium croscarmelose, another excluded adjuvant, with gabapentin, and used a typical amount of that adjuvant. *Id.* When Judge Lifland specifically considered Apotex's product, he noted his earlier preliminary decision with respect to Purepac, but held that the product did not infringe the patent under Pfizer's own claim interpretation because of Apotex's use of sodium croscarmelose. *Id.* at 47-48. Pfizer has presented no argument as to why this Court should reconsider its summary judgment decision on this issue.

### 3.    Issuance of the '482 Patent.

Finally, Pfizer repeats its summary judgment argument that Plaintiffs cannot show that the '482 Patent could have issued earlier than it did in the actual world. Pfizer Op. Br. 10-11. At summary judgment, Plaintiffs relied on their patent law expert Professor Robert Moy to show that, if Pfizer had not been trying to delay the entry of generic Neurontin, the '482 Patent could have issued earlier. Contrary to Pfizer's suggestion, Professor Moy did not assume this result. He calculated

that, if Pfizer had simply responded to routine PTO Office Actions on time rather than paying for a series of extensions, the '482 Patent could have issued *at least* 20 months earlier than it actually issued.  Pl. SJ Opp. 41-42.  Plaintiffs also objected to Pfizer's reliance on evidence from Dr. Tinney, Pfizer's in house counsel, that the '482 Patent could not have issued earlier than it actually issued because it resulted from a chance encounter that he had in an airport in 1999 with Dr. Tröndlin, another Pfizer employee.  The evidence of this encounter is inconsistent with Pfizer's assertion of the attorney-client privilege and constitutes improper hearsay.  *Id.* at n.16.  In any event, Plaintiffs presented additional evidence that the information that Dr. Tinney claimed to get from Dr. Tröndlin was created in the 1980s and available at anytime to Pfizer at its request.  *Id.* The Court already considered this argument and found that there were disputed issues of fact.

## CONCLUSION

Pfizer has not identified a single argument warranting reconsideration of the Court's summary judgment opinion.  Accordingly, the Court should deny Pfizer's request.

Date: """June 27, 2014                  Respectfully submitted,
Refiled:  July 7, 2014

                                        HANGLEY ARONCHICK SEGAL
                                        PUDLIN & SCHILLER

                                        /s Barry L. Refsin
                                        Barry L. Refsin

One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
(215) 568-0300 fax
*Attorney for CVS and Rite Aid*

Scott E. Perwin (pro hac vice)
KENNY NACHWALTER P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
(305) 373-1000
*Attorney for Walgreen Plaintiffs*

Barry L. Refsin
HANGLEY ARONCHICK SEGAL
    PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
(215) 568-0300 fax
*Attorneys for CVS and Rite Aid*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE NEURONTIN ANTITRUST** : | **Honorable Faith S. Hochberg, U.S.D.J.** |
| **LITIGATION** : | **MDL Docket No.: 1479** |
| : | **Master Civil Action No. 02-1390 (FSH)** |
| : | |
| **This Document Relates to:** : | |
| **ALL ACTIONS** : | |
| : | |

## CERTIFICATE OF SERVICE

I, Barry L. Refsin, certify that on the 27th day of June, 2014, I caused the

foregoing Individual Plaintiffs' Response to Pfizer's Brief on Causation to be filed

under seal on the Court's ECF system.  I further certify that, after consultation with

counsel for Defendants to determine whether it had to be maintained under seal,

on this 7th day of July, 2014, I caused an unsealed copy of the brief to be filed on

the Court's ECF system where it is available for viewing and downloading.

        /s Barry L. Refsin          
        Barry L. Refsin